OPINION
Gregory Gilreath appeals the decision of the Municipal Court of Fairborn to revoke his probation.
On December 7, 1998, Appellant was arrested and charged with Domestic Violence, a first degree misdemeanor, for an assault against his wife. (98-CRB 02516). On January 6, 1999, Appellant was arrested and charged with Violation of a Protection Order, also a first degree misdemeanor, involving his wife. (99-CRB-00023). Appellant then entered no contest pleas to both charges on February 3, 1999. The trial court found Mr. Gilreath guilty on both charges. On the domestic violence conviction, the trial court sentenced Appellant to 180 days in jail, which was suspended on the conditions that he commit no future similar offenses, have no contact with his wife, complete counseling with the Batterers' Group, and complete three (3) years of probation. The trial court also ordered Mr. Gilreath to pay a fine of $350.00 plus costs. The trial court imposed the same sentence for the protection order violation except that the fine was $250.00. The suspended sentences were consecutive.
On February 17, 1999, Appellant was arrested and charged with a second violation of a protection order involving his wife. (99-CRB-00293). Appellant pled not guilty to the charge. The case was tried before the bench and the trial court found Appellant guilty. He was sentenced to 180 days in jail, fined $200.00, and assessed costs.
On May 19, 1999, the trial court notified Appellant's counsel that a probation revocation hearing would be held on June 17. A notice was also sent to Mr. Gilreath at his home address but not his incarceration address. Appellant, however, acknowledges in his brief that he was aware of the revocation hearing as early as May 28, 1999.
At the probation revocation hearing, the trial court took judicial notice of the fact of Appellant's second conviction for violation of a protection order. The trial court found this second conviction to be a violation of his probation for the domestic violence conviction and the prior conviction for a violation of a protection order. The Prosecutor, Appellant's counsel, and Appellant then presented arguments in favor of and against reimposition of the suspended jail terms for the domestic violence and first violation of a protection order convictions., Appellant informed the trial court that he had voluntarily attended and completed Phase I of the Batterers' Program in 1998 prior to his first conviction. Appellant admitted he had not completed Phase II of the program as ordered by the trial court upon his convictions in December 1998. The trial court informed appellant that she would be getting some additional information from Steve Piatt from the Batterers' Group regarding appellant's Phase I participation in 1998. At the conclusion of the arguments, the trial court announced it would be taking the matter of whether or not to reimpose the two suspended jail sentences under advisement.
On August 12, 1999, the trial court issued its Judgment Entry. In sentencing Mr. Gilreath, the trial court noted the following:
 Defendant argues that he needs rehabilitation rather than incarceration. The Court dose not entirely disagree. However, Defendant's track record with respect to rehabilitation is spotty at best. Information from Steve Piatt, Director of The Batterers' Group, shows that Defendant was referred for batterers' education-assessment by Montgomery County Third District Court as long ago as December 6, 1993. After completing Phase I, the prognosis was, Mr. Gilreath "appears to have little to no remorse for his violence. We believe Mr. Gilreath continues to be at risk to batter again." On February 17, 1997 Montgomery County Common Pleas Court referred Defendant to Batterers' Group. He attended Phase I and Phase II and Mr. Piatt reported on April 2, 1998, "We believe Mr. Gilreath is somewhat superficial, yet we believe he holds some sincerity in maintaining his nonviolence." Nevertheless, his "sincerity" lasted only eight months when he was charged with, and later convicted of, domestic violence against his current wife. Even after all that, the Court gave Defendant one more chance to prove he could change and ordered Defendant back to counseling. Fourteen days later Defendant was out following his wife again in an incident which this Court considered extremely bizarre and scary. The efforts of this Court, Montgomery County Common Pleas Court and Montgomery County Third District Court to rehabilitate Defendant have been unsuccessful. The Court will make no more efforts.
The trial court reimposed the two suspended sentences and sentenced the Appellant to serve two consecutive six month sentences in jail consecutive to the six month sentence he was in the process of completing. Mr. Gilreath then appealed the trial court's decision to revoke his probation.
Appellant raises two assignments of error:
 I. THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS.
II. THE TRIAL COURT'S IMPOSITION OF SENTENCE WAS IMPROPER.
 I. A.
Appellant's first argument under his first assignment of error is that he was denied due process because he did not receive written notice of the claimed probation violations and did not have an opportunity to confront and cross-examine adverse witnesses.
The Fourteenth Amendment guarantees an individual certain minimum due process procedures before the State can revoke his probation. Gagnon v. Scarpelli (1973), 411 U.S. 778, 782,93 S.Ct. 1756, 36 L.Ed.2d 656 citing Morrisey v. Brewer (1972),408 U.S. 471, 485, 92 S.Ct. 2593, 33 L.Ed.2d 484; State v. Miller
(1975), 42 Ohio St.2d 102, 104. An individual is first guaranteed a preliminary hearing to determine whether there is probable cause to believe he has violated the terms of his probation. Gagnon, supra at 782; Miller, supra at 104. Once the court finds that the conditions of probation have been violated, a second hearing is held to determine whether probation should be revoked. Gagnon, supra at 782; Miller, supra at 104. At the final revocation hearing, the State must (1) provide the probationer with written notice of the alleged violations of probation; (2) disclose the evidence against him; (3) give the probationer an opportunity to be heard in person and to present witnesses and documentary evidence; (4) allow him to confront and cross-examine adverse witnesses; (5) afford him a neutral and detached hearing body; and, (6) provide the probationer with a written statement by the fact finder as to the evidence relied upon and the reasons for revoking probation. Gagnon, supra at 782citing Morrisey; Miller, supra at 104. Appellant did not object to the claimed due process violations by the trial court during the probation revocation hearing. Ordinarily, failure to object to due process violations during a probation revocation waives any error. InMatter of Cottrill (July 9, 1998), Ross App. No. 97CA2355 unreported, at *2. However, a party who fails to object to a due process violation at the hearing may still prevail on appeal if the procedural error rises to the level of plain error. Crim.R. 52 (B). The plain error doctrine permits an appellate court to reverse the judgment of the trial court if "the error * * * [is] of such nature that the outcome of the hearing would have been otherwise but for the error." State v. Hannah, (Dec. 15, 1998), Franklin App. No. 98AAP-518, unreported at *2 citing State v. Long (1978), 53 Ohio St.2d 91,97.
Although Appellant did not receive prior written notice of the claimed violations of probation at his incarceration address, he admits in his brief he acknowledged in a letter to the trial court that he had received "word" of a probation revocation hearing as early as May 28, 1999. "[I]t is inconceivable to us that he would not have understood that the claimed violation" was for his second conviction for violation of a protection order in 99-CRB-00293. See State v. Merchant (March 8, 1988), Mont. App. No. 10419 unreported, at *1. The trial court informed Mr. Gilreath that his jail terms for the domestic violence conviction and first conviction for violation of a protection order would be suspended upon the condition that he commit no future similar offenses and have no future contact with his wife. Mr. Gilreath was aware of the consequences of his actions when he violated the protection order for the second time. He admits he had prior notice that the trial court would be holding a probation revocation hearing. We find it hard to believe Appellant did not know that the claimed violation of probation was anything other than his second conviction for violation of a protection order. Therefore, Appellant was not prejudiced by the trial court's failure to send written notice of the claimed violations of probation to his incarceration address.
Nor was Appellant prejudiced by not having the opportunity to confront and cross-examine adverse witnesses. Appellant argues he should have been allowed to confront and cross-examine Steve Piatt, Director of the Batterers' Group, and Ms. Clifton, his probation officer. It is noteworthy that the record discloses that Ms. Clifton was present at the revocation hearing but offered no testimony adverse to the appellant. Appellant's counsel did not request the opportunity to question her as upon cross-examination. Also the trial court informed appellant at the revocation hearing that she would be reviewing Mr. Piatt's report before imposing sentence. Again appellant's counsel did not request the opportunity to review the report before the court acted. It is clear from the court's judgment entry that Mr. Piatt's report had little bearing on the court's decision to impose the consecutive six month sentence. In short, we fail to see how the outcome of the revocation hearing would have been different if Mr. Piatt and Ms. Clifton had taken the witness stand and been cross-examined by Appellant's counsel. The trial court took judicial notice of the fact that Appellant had been found guilty of the second violation of a protection order, a clear violation of his probation for the first two convictions. The issue of whether Appellant violated the terms of his probation was not contested at the revocation hearing; thus, there was no reason for Appellant to confront and cross-examine adverse witnesses. . .State v. Stowers (Jan. 31, 1985), Cuyahoga App. Nos. 48572, 48575, 48576, 48577, 48578, 48584, 48590, 48872 48873 unreported, at * 4; State v. Dandar (Sept. 4, 1998), Lucas App. No. L-97-1368 unreported, at *2; State v Moosman (Oct. 23, 1998), Wood App. No. WD-97-114 unreported at *4. Accordingly, Appellant was not prejudiced by not having an opportunity to confront and cross-examine adverse witnesses.
 B.
Appellant also contends that the trial court erred by reimposing appellant's sentence by way of a written sentencing entry instead of an in-court proceeding. This argument has merit. Crim. R. 43 (A) provides that: "[t]he defendant shall be present at the arraignment and every stage of the trial, including * * * imposition of sentence." In the present case, the trial court did not reimpose the two jail sentences in the defendant's presence. Instead, the trial court sentenced to the defendant to 233 days in jail by way of a written sentencing entry. The trial court erred in doing so.
 C.
Lastly, Appellant argues the probation revocation procedure was improper because of the trial court's delay in reimposing the two jail sentences. Appellant cites State v. Carreker in support of his proposition. In Carreker, we held a trial court acted reasonably in waiting one and a half years after the defendant was convicted of aggravated burglary to revoke his probation for a drug trafficking charge. State v. Carreker (1987), 39 Ohio App.3d 112,113. In the present case, Appellant contends that it was unreasonable for the trial court to reimpose the jail terms almost two months after deciding to revoke his probation at the revocation hearing, not that the trial court acted unreasonably in waiting to revoke his probation after his second conviction of violation of a protection order. Therefore, our decision inCarreker is not applicable to the present case., Appellant's first assignment of error is overruled in part and sustained in part.
 II. A.
Appellant contends that the trial court's imposition of sentence was improper because the trial court failed to specifically refer to any of the sentencing criteria listed in R.C. 2929.22 when sentencing him to imprisonment for the two misdemeanors. R.C. 2929.22 provides, in pertinent part:
 (A) In determining whether to impose imprisonment for a misdemeanor
 * * * the court shall consider the risk that the offender will commit another offense and the need for protecting the public from the risk; the nature and circumstances of the offense; the history, character, and condition of the offender and the offender's need for correctional or rehabilitative treatment; any statement made by the victim under sections 2930.12 to 2930.17 of the Revised code, if the offense is a misdemeanor specified in division (A) of the Revised Code; and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on the offender.
 (B)(1) The following do not control the court's discretion but shall be considered in favor of imposing imprisonment for a misdemeanor:
(a) The offender is a repeat or dangerous offender.
 (b) Regardless of whether or not the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older, permanently and totally disabled, or less than eighteen years of age at the time of the commission of the offense.
 (c) The offense is a violation of section 2919.25 or a violation of section 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.
 (2) If the offense is a violation of section 2919.25 or a violation of section 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation and the court decides to impose a term of imprisonment upon the offender, the factor listed in division (B)(1)(c) of this section shall be considered in favor of imposing a longer term of imprisonment on the offender.
 (C) The criteria listed in divisions (C) and (E) of the section 2929.12 of the Revised Code that mitigate the seriousness of the offense and that indicate that the offender is unlikely to commit future crimes do not control the court's discretion but shall be considered against imposing imprisonment for a misdemeanor.
The criteria listed in (C) and (E) of R.C. 2929.12 are:
(C)(1) The victim induced or facilitated the offense.
 (2) In committing the offense, the offender acted under strong provocation.
 (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.
* * *
 (E)(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
 (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 (3) Prior to committing the offense, the offender had led a law-abidinglife for a significant number of years,
 (4) The offense was committed under circumstances not likely to recur.
(5) The offender shows genuine remorse for the offense.
 We have previously held that where the sentence imposed by trial court is well within the statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory criteria listed in R.C. 2929.22
and R.C. 2929.12 "in the absence of an affirmative showing that it failed to do so." State v. Gilbo (1994), 96 Ohio App.3d 332, 340 quoting State v. Crouse (1987), 39 Ohio App.3d 18, 20. There is no requirement in either statute that the trial court state on the record that it has considered the statutory criteria or discuss them. State v. Polick (1995), 101 Ohio App.3d 428, 431.
In the present case, the trial court sentenced Appellant to serve a six-month jail term for the two misdemeanors he committed. This sentence is well within the limits prescribed by the misdemeanor sentencing statute. R.C. 2929.21 (B)(1). Appellant has not made an affirmative showing that the trial court failed to consider the sentencing criteria listed in R.C.2929.12 and R.C.2929.22. Therefore, we presume the trial court considered the statutory criteria in sentencing Appellant to serve a six month jail term for the misdemeanors.
 B.
Appellant also argues that the trial court's imposition of sentence was improper because the trial court failed to make specific findings before imposing consecutive six month sentences upon him. There is no statute in the Revised Code that requires a trial court to make certain findings before imposing consecutive sentences for misdemeanors. Accordingly, we find Appellant's argument is without merit.
 C.
Appellant's final argument under his second assignment of error is that the trial court imposed a more severe punishment than was warranted for his violation of probation in retaliation for Appellant's decision to go to trial on the second charge of violation of a protection order. A trial court must not create the appearance it is imposing a more severe punishment than is warranted in order to sanction a defendant for exercising his right to trial. State v. Scalf (1998), 126 Ohio App.3d 614, 621. In the present case, there is no indication whatsoever in the trial court's Judgment Entry that it even considered Appellant's decision to go to trial on the third charge in sentencing Appellant for violation of his probation. Appellant's argument is, therefore, without merit., Appellant's second assignment of error is overruled.
Judgment Affirmed in part, Reversed in part, and this matter is Remanded to the trial court to conduct the sentencing in open court as required by law.
 _______________________ BROGAN, J.
WOLFF, J., concurs. FAIN, J., dissents.